Joonsik Maing (SBN 240927)
Email: jmaing@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone:  +1 415 659 4812
Facsimile:  +1 415 391 8269

Attorneys for Plaintiff
General Electric Capital Corporation, a
Delaware Corporation

E-filing

FILED

2011 JUN 30 P 12: 25

RICHARD W. WIEKING

JCS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 11 3238

GENERAL ELECTRIC CAPITAL
CORPORATION, a Delaware corporation,

        Plaintiff,

    vs.

MASTER KRAFT MACHINING INC., a
California corporation; and KURT T.
MATSUDA, a citizen and resident of California,

        Defendants.

No.:

**COMPLAINT FOR BREACH OF
CONTRACT**

Plaintiff General Electric Capital Corporation, by its attorneys, complains of Defendants

Master Kraft Machining, Inc. and Kurt T. Matsuda, as follows:

## **THE PARTIES**

1.    Plaintiff General Electric Capital Corporation ("GE Capital") is a corporation

organized under the laws of Delaware with its principal place of business located in Norwalk,

Connecticut. At all times relevant to this matter, GE Capital was and is in the business of, *inter alia*,

leasing manufacturing equipment to its customers.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2. Defendant Master Kraft Machining, Inc. is a corporation organized under the laws of the State of California with its principal place of business located at 850 Corporate Way, Fremont, California. Master Kraft Machining, Inc. was incorporated by the California Secretary of State on December 8, 2006. Prior to incorporation, the company conducted business as "Kurt T. Matsuda, d/b/a, Master Kraft Machining." Master Kraft Machining, Inc. and Kurt T. Matsuda, d/b/a, Master Kraft Machining are collectively referred to as "Master Kraft" in this Complaint. At all times relevant to this matter, Master Kraft was and is in the business of, *inter alia*, manufacturing and assembling machines and parts for various industries, including the medical and aerospace industries. Master Kraft leased manufacturing equipment from GE Capital.

3. Defendant Kurt T. Matsuda ("Matsuda"), is an individual who is a citizen and resident of the State of California. At all times relevant to this matter, Matsuda was the president of or affiliated with Master Kraft or an individual doing business as Master Kraft.

## JURISDICTION

4. This action is within the original jurisdiction of this Court pursuant to 28 United State Code section 1332(a) based on the diversity of citizenship of the parties and amount in controversy exceeding \$75,000, exclusive of interest and costs.

## VENUE

5. Venue is proper in the Northern District under 28 United State Code section 1391(a) because a substantial part of the events or omissions giving rise to the claims in this case occurred in this judicial district.

1

2

## INTRADISTRICT JURISDICTION

3    6.    Pursuant to Local Rule 3-2(d), this case should be assigned to the San Francisco

4    Division or the Oakland Division because a substantial part of the events or omissions which give

5    rise to GE Capital's claims arose out of events taking place in Alameda County, California.

6

7    ## MASTER KRAFT'S LEASE WITH MANUFACTURERS FINANCING SERVICES

8

9    7.    On August 1, 2007, Manufacturers Financing Services, a subdivision of Ellison

10   Technologies, Inc. (collectively, "MFS"), as lessor, and Master Kraft, as lessee, entered into

11   Equipment Lease, No. 28101730 (the "MFS Lease"). A true and correct copy of the MFS Lease is

12   attached hereto as Exhibit A and incorporated by reference herein.

13

14   8.    Pursuant to the MFS Lease, MFS leased certain manufacturing equipment to Master

15   Kraft as described therein, namely one (1) Mori Seiki Precision Horizontal Production Center

16   Equipped with Tool Breakage Detection System, AICC II Fast Data Server, 6 Pallet Carrier Pallet

17   Pool, Coolant Gun at Setup Station, Cooljet 70/36DVF 1000 PSI High Pressure Coolant System,

18   Tooling and all standard and any additional parts, attachments and accessories (the "MFS

19   Equipment").

20

21   9.    Also pursuant to the MFS Lease, on August 1, 2007, Matsuda personally guaranteed

22   all of Master Kraft's obligations to MFS, including those obligations under the MFS Lease and any

23   obligations arising after the execution date of the MFS Lease (the "MFS Guaranty"). The MFS

24   Guaranty is provided at Paragraph 14 of the MFS Lease.

25

26   10.    At about the same time the MFS Lease was executed, MFS and Master Kraft

27   executed an Addendum to Equipment Lease pursuant to which, *inter alia*, MFS granted Master Kraft

28   the option to either extend the MFS Lease or purchase the MFS Equipment upon expiration of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 `MFS Lease, pursuant to the terms stated therein. A true and correct copy of the Addendum to Lease

2 Agreement is attached hereto as Exhibit B and incorporated by reference herein.

## ASSIGNMENT BY MFS TO GE CAPITAL

11.     On December 28, 2007, MFS assigned to GE Capital, for due consideration, the

entirety of its interest in the MFS Lease. See document entitled "Schedule," a true and correct copy

of which is attached hereto as Exhibit C and incorporated herein by reference.

## PAST DEFAULTS, LITIGATION AND SETTLEMENT

12.     In around March 2009, Master Kraft, as lessee, and Matsuda, as guarantor, defaulted

under the MFS Lease for failing to make monthly rent payments required under that lease.

13.     On June 25, 2009, GE Capital initiated a lawsuit in the United States District Court

for the Northern District of California against Master Kraft and Matsuda to collect the past due

amounts and all other amounts due and owing under the MFS Lease and related MFS Guaranty.

That lawsuit was entitled *General Electric Capital Corporation v. Master Kraft Machining, Inc. et*

*al.*, Case No. C09-02854 SI ("Lawsuit").

14.     On March 19, 2010, GE Capital, Master Kraft and Matsuda entered into a settlement

agreement, resolving the Lawsuit ("Settlement Agreement"). The Settlement Agreement required

Master Kraft and Matsuda to make several settlement installment payments. Paragraph 8 of the

Settlement Agreement expressly states that "[n]othing in this Settlement Agreement relieves Master

Kraft and Matsuda from continuing to be responsible, jointly and severally, for making any and all

payments required under the [MFS Lease] after July 15, 2010." A true and correct copy of the

Settlement Agreement is attached hereto as Exhibit D and incorporated herein by reference.

15. Master Kraft and Matsuda made all the settlement installment payments required under the Settlement Agreement. After those payments were made, Master Kraft and Matsuda continued to be responsible, jointly and severally, for making any and all payments required under the MFS Lease, as well as complying with all of the non-monetary obligations imposed on them by the MFS Lease.

## MOST RECENT DEFAULTS

16. Master Kraft and Matsuda are again in default under the MFS Lease for failing to pay the periodic rent payments required under that lease.

17. On May 27, 2011, GE Capital delivered to Master Kraft and Matsuda a formal notice of default notifying Master Kraft and Matsuda that they were in default under the MFS Lease for failure to remit past due payments that, on May 27, 2011, totaled $57,147.63 (the "Notice Letter"). A true and correct copy of the Notice Letter is attached hereto as Exhibit E and incorporated herein by reference. Among other things, the Notice Letter demanded payment of past due amounts within ten (10) days of May 27, 2011.

18. Master Kraft and Matsuda failed and refused to pay all past due amounts within ten (10) days of May 27, 2011. Pursuant to the terms of the MFS Lease, the full amount due under the MFS Lease has been accelerated and is now due and owing from Master Kraft and Mastuda, including but not limited to all payment obligations, interest, attorneys' fees, expenses, and all other related costs and amounts due under the MFS Lease.

19. As of the date of the filing of this Complaint, neither Master Kraft nor Matsuda, as the guarantor, have made any payments under the MFS Lease, and continue to be in default under that lease. In fact, neither Master Kraft nor Matsuda have made any part of the required payments under the MFS Lease since January 2011. All amounts due and owing under the MFS Lease remain

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 `outstanding and unpaid.

2

3 20. GE Capital and its predecessors in interest have, at all times, performed any and all
4 conditions and obligations required of them under the MFS Lease, MFS Guaranty, and the
5 Settlement Agreement.

6

7 ## SALE OF LEASED EQUIPMENT AND AMOUNTS DUE UNDER THE MFS LEASE

8

9 21. Under the MFS Lease, upon default by Master Kraft or Matsuda, GE Capital, at its
10 discretion, could sell, re-lease or dispose of the MFS Equipment. On about June 1, 2011, GE Capital
11 exercised its rights under the MFS Lease, and the Uniform Commercial Code, to sell or otherwise
12 dispose of the MFS Equipment by selling that equipment in place to a third party on about June 1,
13 2011. The sale was conducted in a commercially reasonable manner. Although not required under
14 the MFS Lease, Master Kraft and Matsuda authorized the sale of the MFS Equipment. A true and
15 correct copy of that authorization is attached hereto as Exhibit F and incorporated herein by
16 reference.

17

18 22. GE Capital sold the MFS Equipment to the third party for \$575,000. After deducting
19 costs related to the sale of the MFS Equipment, the net proceeds from that sale were \$517,000 ("Sale
20 Proceeds").

21

22 23. The MFS Lease and MFS Guaranty expressly provide for recovery by GE Capital
23 from Master Kraft of any liabilities or expenses, including legal expenses, incurred by GE Capital in
24 enforcing the MFS Lease and MFS Guaranty.

25

26 24. As of June 17, 2011, the total amount due and owing under the MFS Lease was
27 \$344,707.35 (*i.e.*, total past due payments, tax, late charges, legal expenses, remaining payments and
28 residual in the amount of \$862,207.32 less \$517,500 in Sale Proceeds). Additional amounts,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 │ including legal expenses, continue to accrue pursuant to the terms of the MFS Lease.

2

3 │ **FIRST CAUSE OF ACTION**

4 │ **(Breach of Contract: Master Kraft)**

5

6 │ 25.    GE Capital incorporates and realleges paragraphs 1 through 24 above as paragraph 1

7 │ through 24 of the First Cause of Action.

8

9 │ 26.    Under the MFS Lease, GE Capital is entitled to contractual money damages from

10 │ Master Kraft, as provided therein, both for the arrearages in installments of rent and any and all

11 │ additional damages specified as a remedy after default.

12

13 │ 27.    The MFS Lease provides that GE Capital shall recover its attorneys' fees, costs of

14 │ collection, and interest on all unpaid amounts due and owing.

15

16 │ WHEREFORE, GE Capital prays that:

17

18 │     a.    Judgment be entered in favor of GE Capital and against Master Kraft in the amount

19 │ due under the MFS Lease, the exact amount to be proven prior to or at trial;

20

21 │     b.    GE Capital be awarded its costs, reasonable attorneys' fees, and interest on all unpaid

22 │ amounts due and owing; and

23

24 │     c.    GE Capital be granted such other and further relief as shall be just and equitable.

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## SECOND CAUSE OF ACTION

### (Breach of Contract: Matsuda)

28.     GE Capital incorporates and realleges paragraphs 1 through 27 as paragraphs 1 through 27 of the Second Cause of Action.

29.     Under the MFS Guaranty, GE Capital is entitled to contractual money damages from Matsuda, as provided therein, both for the arrearages in installments of rent and any and all additional damages specified as a remedy after default.

30.     The MFS Guaranty provides that GE Capital shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, GE Capital prays that:

a.      Judgment be entered in favor of GE Capital and against Matsuda in the amount due under the MFS Lease and MFS Guaranty, the exact amount to be proven prior to or at trial;

b.      GE Capital be awarded its costs, reasonable attorneys' fees, and interest on all unpaid amounts due and owing; and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

c.     GE Capital be granted such other and further relief as shall be just and equitable.

DATED: June 30, 2011.

REED SMITH LLP

By_____
Joonsik Maing
Attorneys for Plaintiff
General Electric Capital Corporation, a Delaware
Corporation

US_ACTIVE-106554371.1

COMPLAINT

Exhibit A




**EQUIPMENT LEASE NO. 2801730**

Manufacturers Financing Services ("Lessor") hereby leases to the undersigned ("Lessee") the equipment described below ("Equipment") under the terms and conditions contained herein which, together with all riders, schedules, exhibits and amendments hereto, is hereinafter referred to as the ("Lease").

| LESSEE | VENDOR |
|---|---|
| Name: Master Kraft Machining, Inc.<br>dba: | Name: Ellison Technologies - Enc<br>See Schedule "A" for additional vendor(s) (if applicable) |
| Address: 2315 Paragon Drive<br>San Jose, CA 95131 | Address: 1262 Quarry Lane, Suite B<br>Pleasanton, CA 94566 |
| Telephone: 408-573-5550 Fax: 408-573-5551 | Telephone: (925) 485-3662 Fax: (925) 485-3668 |
| Contact: Jon S. Kline | Contact: Peter Histed |

### EQUIPMENT SCHEDULE

| Quantity | Description | Model No. | Serial No. |
|---|---|---|---|
| 1 | Mori Seiki Precision Horizontal Production Center Equipped with Tool Breakage Detection System, AICC II Fast Data Server, 6 Pallet Carrier Pallet Pool, Coolant Gun at Setup Station, Cooljet 70/36DFV 1000 PSI High Pressure Coolant System, and all standard and any additional parts, attachments and accessories. | NH8000 DCG | |

The Equipment shall be delivered to and located at: 850 Corporate Way, Fremont, CA 94539

### PAYMENT SCHEDULE

**PAYMENTS**
Payments shall be made in **Eighty-Four** consecutive installments throughout the Lease term, commencing on the Acceptance Date of the equipment (the "Term Commencement Date") and the remaining installments are to commence 30 days from the Term Commencement Date and are due the same day of each successive month. Each Payment shall be in the amount set forth below.

Lease Term: **84** months commencing on the Term Commencement Date.

Advance Payments: **First** Payable upon signing of this lease.

Documentation Fee: **$400.00**

Security Deposit: **$0.00**

| PAYMENT NO. | PAYMENT AMOUNT |
|---|---|
| #1 - #84 | $11,737.00 (Plus Use Tax) |

Purchase Option: **FMV**

Sales/Use Tax: Payment amount may be increased to include applicable sales/use tax.

THIS LEASE INCLUDES ALL OF THE TERMS AND CONDITIONS HEREIN WHICH THE PARTIES ACKNOWLEDGE THEY HAVE READ. THIS LEASE IS NOT BINDING ON LESSOR PARTY UNTIL EXECUTED BY LESSOR. This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof. There are no other representations, warranties or agreements except as set forth herein (including, without limitation, rights to purchase any of the Equipment). All amendments and waivers shall be written and signed by the parties hereto. The term "Lease" as used herein shall mean and include any and all Lessees who sign hereunder, each of whom shall be jointly and severally bound thereby. This Lease will not be binding on Lessor until accepted and executed by Lessor.

LESSEE INITIALS: X

AGREED AND ACCEPTED BY:
Manufacturers Financing Services

By: _DARRYL SCHOEN_

Title: PRESIDENT

Date: **DECEMBER 27, 2007**

Dated as of: August 01, 2007
Lessee: Master Kraft Machining, Inc.
By: X
Title: President
Attest: X
(If Corporation, Corporate Secretary)

Guarantor: Kurt T. Matsuda
By: X
Title: (Individual)
Attest: X
(Witness)



Manufacturers Financing Services
9866 S. Pioneer Blvd.
Santa Fe Springs, CA 90670



MFS
Manufacturers Financing Services
9865 S. Pioneer Blvd.
Santa Fe Springs, CA 90670

# TERMS AND CONDITIONS

**1. DELIVERY AND ACCEPTANCE OF EQUIPMENT**
The Equipment is to be delivered and installed at Lessee's expense at the location specified on the face of this Lease and shall be deemed to have been accepted by Lessee for all purposes under this Lease upon Lessor's receipt of the Acceptance Certificate hereto executed by Lessee. Lessor shall not be liable or responsible for any failure or delay in the delivery of the Equipment to Lessee for whatever reason.

**2. TERM AND PAYMENTS**
The Lease Term shall commence on the Term Commencement Date and shall continue for the number of months set forth on the face hereof beyond the Term Commencement Date. Payments ("Payments") shall commence on the Term Commencement Date and shall be due and payable as set forth on the face hereof. The Lease Term - shall automatically extend beyond its original expiration date, on the same terms and conditions (including payments) unless ninety (90) days prior to the expiration of the Lease Term. Lessee gives Lessor written notice of Lessee's election to extend the Lease Term, purchase the Equipment or return the Equipment under the terms hereof. Lessee shall pay an administrative late charge of 5% of the amount of any overdue payment plus interest on such delinquent payment of 1 1/2% per month or the maximum amount permitted by law, whichever is higher. All payments to be made to Lessor shall be made to Lessor at the address shown on the face hereof or at such other place as Lessor shall specify in writing.

If a Fair Market Value Purchase Option is indicated on the face hereof, then so long as no Event of Default has occurred and is continuing hereunder and upon at least ninety (90) days prior written notice to Lessor, Lessee shall have the option at the expiration of the initial Lease Term of this Lease to: 1) purchase all, but not less than all, of the Equipment for an amount equal to the Fair Market Value of the Equipment (plus any taxes applicable at the time of purchase) on the date of the expiration of the initial Lease Term (the "Purchase Date) or, 2) to extend the Lease Term covering all, but not less than all, of the Equipment for a mutually agreed upon period. This Lease shall continue in effect following said extended period until terminated by either party upon not less than ninety (90) days prior written notice. Title to the Equipment shall automatically pass to Lessee on the Purchase Date, provided Lessee had paid the full purchase price. The Fair Market (Rental) Value shall be determined on the basis of and shall be aggregate amount which would be obtainable at the expiration of the initial Lease Term in an arm's length transaction between an informed and willing buyer/user (Lessee) and an informed and willing seller (Lessor) under no compulsion to sell.

The parties agree that the Lease is a "Finance Lease" as defined in Section 2 A of the Uniform Commercial Code ("UCC"). The Lessee may contact the manufacturer of the Equipment (Manufacturer) for a copy of or a description of any rights the Lessee may have arising from a purchase order or supply contract. This Lease cannot be cancelled or terminated by Lessee except as expressly provided herein.

**3. TAXES AND OTHER CHARGES**
Lessee shall pay when due, and defend and indemnify Lessor against liability for, all fees, charges, assessments, and taxes of any kind whatsoever (including any related interest or penalties) now or hereafter imposed by any governmental entity upon the Lease or the Equipment, or with respect to the manufacturing, ordering, shipment, purchase, sale ownership, delivery, leasing, operation, possession, use, return, or other disposition thereof or the rental hereunder (other than taxes on or measured solely by the net income of a Lessor).

If a Fair Market Value purchase option is indicated on the face hereof, Lessor shall be entitled to claim Tax Benefits (hereinafter defined), then, in the event Lessor shall not be entitled, for any reason, to all or any portion of the Tax Benefits (a "Loss"), and after 30 days written notice from Lessor that a Loss has occurred, Lessee shall pay to Lessor a lump sum amount as stated in the notice which, in Lessor's reasonable opinion, will cause Lessor's after-tax economic yield and overall net after tax cash flows to be maintained at the same level as though the Loss had not occurred. As used in this Section, "Tax Benefits" means any deduction under Section 168 of the Internal Revenue Code of 1986 and interest deductions with respect to any indebtedness incurred by Lessor with respect to acquisition of Equipment by Lessor, and assuming an effective corporate tax rate on Lessor of 34%.

**4. INDEMNITY**
Lessee shall bear all risk of loss with respect to the Equipment and indemnify and hold harmless, and defend Lessor against (a) any liabilities and expenses whatsoever (including legal expenses of every kind and nature) arising out of the manufacturing, ordering, purchase, shipment, acceptance or rejection, ownership, titling, registration, leasing, possession, operation, use, return or other disposition of the Equipment, including patent or latent defects, any claims based on absolute tort liability, warranty or patent, trademark or copyright infringement; and (b) any obligation or liability to the Manufacturer of the Equipment arising under any purchase orders issued by or assigned to Lessor.

The covenants and indemnities contained in this Section 4 and Section 3 shall survive the termination of this Lease and shall be payable by Lessee within 7 days of Lessor's written demand thereof.

**5. POSSESSION; INSPECTION; PERSONAL PROPERTY**
Provided no Event of Default has occurred, Lessee shall have quiet possession of the Equipment during the Lease Term. Lessor may require Lessee at Lessee's expense, to affix plates or markings on the Equipment indicating Lessor is the owner. Lessor may enter the Equipment location at reasonable times upon reasonable notice to inspect the Equipment or show it to prospective purchasers or lessees. The Equipment shall remain personal property even though attached or affixed to real property.

**6. DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY**
LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, DESIGN, CONDITION, CAPACITY, DURABILITY, QUALITY OF MATERIAL OR WORKMANSHIP, CONFORMITY WITH ANY DESCRIPTION OR PATENT INFRINGEMENT, AND HEREBY DISCLAIMS ANY SUCH WARRANTY. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE EQUIPMENT, DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. LESSEE HAS MADE THE SELECTION OF EACH ITEM OF EQUIPMENT BASED ON ITS OWN JUDGEMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSEE LEASES THE EQUIPMENT "AS IS."

**7. REPRESENTATIONS, WARRANTIES AND COVENANTS**
Lessee represents, warrants and covenants with Lessor that: (a) Lessee has the form of business organization indicated on the face hereof, and is duly organized, existing, in good standing and qualified to do business wherever necessary to carry on its present business and operations and to own its property: (b) this Lease has been duly executed and authorized, requires no further shareholder or partner approval of, or the giving notice to, any governmental authority and does not to contravene any law, regulation or other governmental order, any certificate or articles of incorporation or by-laws or partnership certificate or agreement, or any agreement, indenture or other instrument to which Lessee is a party or by which it may be bound and constitutes a legal, valid and binding obligation of Lease enforceable in accordance with its terms; (c) Lessee shall not allow any lien, encumbrance or security interest on or with respect to the Equipment or Lease (except by, through or under Lessor) and shall not assign, sell, sublease, or otherwise dispose of any right or interest in this Lease or the Equipment without the prior written consent of Lessor; (d) the Equipment will be used solely in the conduct of Lessee's business and will remain in the location shown on the face hereof. If Lessee is a corporation, a Secretary or Assistant Secretary, by attesting to the execution by the Lessee on the face hereof, certifies that the officer signing on behalf of the Lessee has been duly authorized and empowered to execute this Lease on behalf of the Lessee by appropriate vote of Lessee's Board of Directors or under Lessee's by laws, that such officer did so execute this Lease, and that this Lease has been duly authorized and approved by or under such vote or by-laws.

**8. DEFAULT**
Lessee shall be in default of this Lease upon: (a) failure to pay rent within 10 days of the due date thereof; or (b) failure to perform or observe any covenant, condition or agreement of this Lease where such failure continues for 10 business days after notice thereof to Lessee, or default under any note, security agreement, equipment lease or title retention or conditional sales agreement beyond any period of grace provided with respect thereto whether with Lessor or any third party if the effect of such default is to cause or permit the holder of such indebtedness to cause such indebtedness to become due prior to its stated maturity; or (c) any representation or warranty made by Lessee to Lessor shall prove to be incorrect or the condition of Lessee's affairs shall change so as in the opinion of Lessor to impair materially Lessor's interest or increase materially Lessor's credit risk; or (d) Lessee shall generally not pay its debts as they become due; file or have filed against it a petition under any bankruptcy or insolvency law of any jurisdiction, make an assignment for the benefit of its creditors; consent to the appointment of a custodian, receiver, trustee or other officer with similar powers of itself or any substantial part of its property; be adjudicated insolvent or be liquidated, or take any action for the purpose of the foregoing; or (e) Lessee or any Guarantor of Lessee is declared legally deceased (if sole proprietor or general partner) or if Lessee shall terminate its existence by merger, consolidation, sale of substantially all of its assets or otherwise.

**9. REMEDIES**
Upon default, Lessor may exercise any of the following remedies with respect to any or all Equipment (which for purposes of this Section 9 includes all other personal property Lessee at any time leases or has leased from Lessor or that secures or has secured any indebtedness of Lessee to Lessor): (a) enter the Equipment location and take immediate possession of and remove the same by summary proceedings or otherwise, all without

Initials: X

**Manufacturers Financing Services**
**9866 S. Pioneer Blvd.**
**Santa Fe Springs, CA 90670**

liability to Lessor or by reason of damage to property or such entry or taking possession; (b) sell any or all of the Equipment at public or private sale, re-lease, or otherwise dispose of the Equipment; (c) remedy such default for the account of and at the expense of Lessee; (d) terminate this Lease immediately by written notice to Lessee, whereupon Lessee shall without further demand but at Lessor's option, as liquidated damages for loss of a gain and not as a penalty, forthwith pay Lessor an amount equal to all accrued and unpaid Rentals plus the Present Value of all future Rentals discounted using a rate of six percent (6%) per annum plus all other amounts then payable to Lessee hereunder, and (e) exercise any other right or remedy at law, or in equity or bankruptcy, including specific performance or damages for the breach hereof, including reasonable attorney's fees and court costs.

Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver of any default shall constitute a waiver of any Lessor's other rights

**10. ADDITIONAL SECURITY**

In order to more fully secure its obligations to Lessor hereunder, Lessee hereby grants to Lessor, a security interest in any and all such personal property as Lessee from time to time leases from Lessor or that secures any indebtedness of Lessee to Lessor. Lessee may apply at any time Lessee's Security Deposit to Lessee's obligations hereunder whereupon Lessee shall immediately reimburse Lessor for the amount of the Security Deposits so applied.

**11. NOTICES**

Any notices and demands required or permitted under this Lease shall be in writing by registered or certified mail, return receipt requested, and shall become effective when deposited in the United States mail with postage prepaid at the address herein above set forth, or to such other address as the party to receive notice hereafter designates by such written notice.

**12. USE; REPAIRS; LOSS AND DAMAGE**

Lessee will operate the Equipment in accordance with any applicable Manufacturer's manuals by competent and duly qualified personnel only, in accordance with applicable requirements of law, if any, and for business purposes only. Lessee, at its own cost and expense, shall keep the Equipment in good repair, condition and working order. If any item of Equipment shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or use of such item, Lessee shall promptly pay Lessor an amount equal to the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining unpaid plus the amount of any purchase option or obligation with respect to such item.

**13. INSURANCE**

Lessee shall procure and maintain during the entire term of this Lease, at Lessee's expense, such insurance coverages in such amounts and with such responsible insurers, all as satisfactory to Lessor including: (a) Comprehensive General Liability Insurance with minimum limits of $1,000,000 each occurrence with Lessor named as additional insured; and (b) all Risk Physical Damage Insurance in an amount not less than the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining plus the amount of any purchase option or obligation with respect to such item. Lessor will be named as loss payee. Lessee shall waive Lessee's rights and its insurance carrier's right of subrogation against Lessor for any and all loss or damage. All policies shall contain a clause requiring the insurer to furnish Lessor with at least 30 days prior written notice of any material change, cancellation, or non-renewal of coverage. Upon request by Lessor, Lessee shall furnish Lessor with a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverages are in effect.

**14. GUARANTY**

In order to induce Lessor to enter into this Lease, each guarantor executing on the face hereof hereby unconditionally and absolutely guarantees payment to Lessor of all liabilities of Lessee to Lessor of whatever nature, whether now existing or hereinafter incurred, including reasonable attorney's fees and costs of collection with respect to the enforcement of any such liabilities or this guaranty. This is a guaranty of payment and not of collection and the liability of each guarantor shall not be affected by any invalidity in or unenforceability of such liabilities, change, alteration, renewal, extension, continuation, compromise, waiver or other modification of such liabilities, any of which may be done without notice to or the consent of any guarantor. Each guarantor waives notice of acceptance of this guaranty and of extensions of credit by Lessee to Lessee, presentment and demand for payment of any of the liabilities of the Lessee, protest and notice of dishonor of default to such guarantor of any other party with respect to such liabilities and all other notices, demands, set-offs, counterclaims and defenses of any nature whatsoever. This guaranty may be enforced by Lessee without first proceeding against the Lessee or any other party or against any security which may be available with respect to the Lessee's liabilities. In the event of any default by the Lessee no any obligation owed to the Lessor, whether under this Lease or otherwise, each guarantor agrees not in demand, take steps for the collection of, or assign, transfer or otherwise dispose of any indebtedness owed by the

Lessee to such guarantor. Lessor shall have the sole right to demand, receive, sue for, collect, receipt for and give full discharge for such indebtedness until all of the liabilities of the Lessee to the Lessor have been satisfied in full. If guarantor is a corporation, guarantor certifies that the officer signing on behalf of the guarantor has been duly authorized and empowered to execute and deliver to Lessor this guaranty and that the guaranty has been duly authorized and approved by and under appropriate vote of the guarantor's Board of Directors or its by-laws. No guarantor shall be released or discharged, either in whole or in part, by Lessor's failure or delay to perfect or continue the perfection of any security interest in any property which secures the liabilities of Lessee to Lessor or to protect the property covered by such security interest. Each guarantor waives any duty on Lessor's part (should such duty exist) to disclose to any guarantor any fact or thing related to the business operations or conditions (financial or otherwise) of the Lessee or its property whether now or hereafter known by Lessor.

**15. FURTHER ASSURANCES**

Lessee shall promptly execute and deliver to Lessor such further documents and take such further actions Lessor may require in order to more effectively carry out the intent and purpose of this Lease. Lessee shall provide to Lessor within 120 days after the close of each Lessee's fiscal year, and upon Lessor's request, within 45 days of the end of each quarter of Lessee's fiscal year, a copy of its financial statements prepared in accordance with generally accepted accounting principles, it being understood that all such material shall be held in confidence by Lessor. Lessee hereby appoints Lessor, with full power of substitution, as its agent and attorney-in-fact, which is irrevocable and coupled with an interest, to execute any such financing statements under the Uniform Commercial Code and any appropriate amendments thereto on Lessee's behalf which Lessor deems necessary to protect Lessor's interest in the Equipment. Lessor may file a duplicate or a photocopy of this Lease as a financing statement. In no event shall Lessee lease or otherwise finance upgrades or additions to Equipment with any party other than Lessor without prior written consent of Lessor.

**16. ASSIGNMENT**

This Lease and all rights of Lessor hereunder shall be assignable by Lessor absolutely or as security, without notice to Lessee, subject to the rights of Lessee hereunder. The term Lessor shall mean, as the case may be, any assignee of Lessor. Any such assignment shall not relieve Lessor of its obligation hereunder unless specifically assumed by assignee, and Lessee agrees it shall pay such assignee without any defense, rights of set-off, or counterclaims and shall not hold or attempt to hold such assignee liable for any Lessor's obligations hereunder. LESSEE MAY NOT SUBLEASE NOR ASSIGN ITS RIGHTS OR OBLIGATIONS HEREUNDER WITHOUT LESSOR'S PRIOR WRITTEN CONSENT.

**17. LESSEE'S OBLIGATIONS UNCONDITIONAL**

This Lease is a net lease and Lessee shall not be entitled to any abatement of any amount payable hereunder and such payments will be made absolutely and unconditionally without set-off, counterclaim, recoupment, defense or other right which Lessee may have against any person for any reason whatsoever.

**18. RETURN OF EQUIPMENT**

Upon expiration of the Lease Term, Lessee, at its own expense, shall immediately return the Equipment in the same condition as when delivered to Lessee, ordinary wear and tear excepted, to such location as Lessor shall designate, free and clear of all liens, encumbrances and rights of others pursuant to Manufacturer's de-installation, packing and shipping specification. Upon return of Equipment, Lessee shall provide Lessor with a certificate from the Manufacturer or qualified maintenance organization acceptable to Lessor stating that the Equipment has been inspected, tested, and qualifies for their regular maintenance contract and is in the same condition as at the Acceptance Date (ordinary wear and tear resulting from proper use excepted). In the event that Lessee does not provide such a certificate, Lessor shall have the right to have the Equipment inspected and tested and Lessee shall pay Lessor the cost of such inspection and testing, and any repairs necessary for the Manufacturer or maintenance organization to accept the Equipment under a maintenance contract at it's then standard rates. Lessee shall remain obligated to pay Rent on the unreturned and uncertified Equipment until Lessor has been provided with such certificate or such acceptance. The risk of loss and obligation to insure the Equipment shall remain with the Lessee until the returned Equipment is accepted by Lessor. In the event Lessee shall not surrender up and redeliver the Equipment as herein required, the term of this Lease with respect to such Equipment shall continue on a month-to-month basis terminable by Lessor upon 30 days advance written notice as a rent per month equal to the highest monthly rent for the equipment payable during the Lease Term.

**19. MISCELLANEOUS**

Any provision of the Lease which is unenforceable shall not affect the enforceability of the remaining provisions hereof. A waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon Lessee by Section 2A of the UCC. This Lease shall in all aspects be governed by and construed in accordance with the law of the State of California, including all matters of construction, validity, and performance.

Page 3 of 3

Initials: X ____



*MANUFACTURERS*
*FINANCING*
*SERVICES*

*9865 SOUTH PIONEER BLVD.*
*SANTA FE SPRINGS, CA 90670*
*TEL: (562) 949-4771*
*FAX: (562) 942-2657*

## RATE LOCK AGREEMENT

Rate Lock Fee: Lessee acknowledges that a fee equal to $9,621.33 is given for the express purpose of locking the quoted rate/payment for fundings that occur on or before December 31, 2007. This fee is refundable only (x) when the entire approved funding is drawn or (y) if Lessor does not approve the transaction (after receipt from Borrower of all reasonably requested information). If the entire approved funding is not drawn, then a pro-rata portion of the fee will be refunded (rated to the amount that was drawn). If the draw occurs after the proposed date, then the Lessor reserves the right to terminate the commitment to rate lock and adjust the rate/payment as per market conditions. If Lessee chooses NOT to accept Lessor's adjusted rate/payment, Lessor shall retain the commitment fee. For the avoidance of doubt, if Lessor approves the transaction, but the transaction is never consummated, Lessor shall have no obligation to refund this fee.

|  | Manufacturers Financing Services |  | Master Kraft Machining, Inc. |
|---|---|---|---|
| Lessee: | Master Kraft Machining, Inc. | Lessor: | Manufacturers Financing Services |
| By: | X | By: | |
| Title: | President | Title: | President |
| Date: | X DECEMBER 27, 2007 | Date: | 08/08/07 |

Exhibit B



**MANUFACTURERS**
**FINANCING**
**SERVICES**

*9865 SOUTH PIONEER BLVD.*
*SANTA FE SPRINGS, CA 90670*
*TEL: (562) 949-4771*
*FAX: (562) 942-2657*

**Addendum to Equipment Lease**
Option to Purchase

Equipment Lease Number: 2801730 dated as of August 01, 2007

Name and Address of Lessee:
Master Kraft Machining, Inc.
2315 Paragon Drive
San Jose, CA 95131

This Addendum is attached to and made a part of the Equipment Lease identified above between Lessee and Lessor (the "Lease"). All terms and conditions of the Lease shall remain in full force and effect except to the extent modified by this Addendum.

End of Term Options: The following provision shall supersede and replace the entire second paragraph of Section No 2 (Terms and Payments) of the Lease.

1. Upon expiration of the Initial Term of the Lease and, except as otherwise specifically set forth herein, any renewal term, and, provided that the Lease has not been terminated early and Lessee is in compliance with the Lease in all respects, Lessee may upon at least 90 but not more than 120 days prior written notice to Lessor exercise one of the following options:

(i) purchase all but not less than all of the Equipment for a purchase price equal to the then Fair Market Value of the Equipment. "Fair Market Value" of the Equipment for purposes of this paragraph shall be an amount determined according to the following procedure. Upon receipt of Lessee's notice of election to purchase the Equipment, Lessee and Lessor will attempt to agree on an amount during the next 30 days, and the amount so agreed upon shall be the Fair Market Value. In the event Lessor and Lessee cannot agree on an amount during such 30-day period, then each party shall choose an independent appraiser, and the two appraisers shall each determine the Fair Market Value of the Equipment on the basis of an arm's-length sale between an informed and willing buyer (other than a buyer currently in possession) and an informed and willing seller under no compulsion to sell. The average of the amounts determined by the two appraisers shall be the Fair Market Value. Each party shall pay the expenses of the appraiser it chooses. In no event shall the fair market value exceed 33% of the original purchase price;

(ii) renew the Lease with respect to all but not less than all of the Equipment at the expiration of the Initial Term of the Lease at the then Fair Market Rental Value. All other terms and conditions of the Lease shall remain in full force and effect throughout the renewal period. Upon expiration of the renewal term Lessee may either purchase the Equipment pursuant to paragraph 1(i) above, renew the Lease for the then Fair Market Rental Value of the Equipment for a term to be agreed upon by Lessee and Lessor, or return the Equipment in accordance the Lease. "Fair Market Rental Value" of the Equipment for purposes of the preceding sentence shall be an amount determined according to the following procedure. Upon receipt of Lessee's notice of election to renew the Lease, Lessee and Lessor will attempt to agree on an amount during the next 30 days, and the amount so agreed upon shall be the Fair Market Rental Value. In the event Lessor and Lessee cannot agree on an amount during such 30-day period, then each party shall choose an independent appraiser, and the two appraisers shall each determine the Fair Market Rental Value of the Equipment on the basis of an arm's-length transaction between an informed and willing lessor and an informed and willing lessee under no compulsion to lease. The average of the amounts determined by the two appraisers shall be the Fair Market Rental Value. Each party shall pay the expenses of the appraiser it chooses; or

(iii) return the Equipment to Lessor in accordance with paragraph 18 of the Lease.

2. If Lessee should give timely notice of election to purchase the Equipment and fail to make timely payment of the purchase price, then Lessor may in its sole discretion, by written notice to Lessee, (a) treat the Equipment as purchased and enforce payment of the purchase price, or (b) declare a failure to meet the conditions of purchase whereupon the interest of Lessee in the Lease and the Equipment shall terminate automatically.

3. Following Lessor's receipt of the purchase price for the Equipment and upon request by Lessee, Lessor will deliver a bill of sale transferring the Equipment to Lessee. Lessor hereby warrants that at the time of transfer the Equipment will be free of all security interests and other liens created by or arising through Lessor. LESSOR MAKES NO OTHER WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT.

4. Lessee agrees to pay all sales and use taxes arising on account of any sale of the Equipment upon exercise of the purchase option granted hereunder.

Notwithstanding the, foregoing, Lessee shall have no obligation to indemnify Lessor for any Loss caused solely by (a) a casualty to the Equipment if Lessee pays the amount Lessee is required to pay as a result of such casualty, (b) Lessor's sale of the Equipment other than on account of an Event of Default hereunder, (c) failure of Lessor to have sufficient income to utilize its anticipated tax benefits or to timely claim such tax benefits, and (d) a change in tax law (including tax rates) effective after the Lease begins.

For purposes of this paragraph 6, the term "Lessor" shall include any member of an affiliated group of which Lessor is (or may become) a member if consolidated tax returns are filed for such affiliated group for federal income tax purposes. Lessee's indemnity obligations under this paragraph 6 shall survive termination of the Lease.

Lessor:
Manufacturers Financing Services

By:

Name: Darryl Schoen
Title: President

Lessee:
Master Kraft Machining

By: X

Name: X Kurt Merlon
Title: President



**MANUFACTURERS**
**FINANCING**
**SERVICES**

*9865 SOUTH PIONEER BLVD.*
*SANTA FE SPRINGS, CA 90670*
*TEL: (562) 949-4771*
*FAX: (562) 942-2657*

## ADDENDUM A

RE: Equipment Lease Agreement 2801730 dated **August 01, 2007** ("Lease"), **Master Kraft Machining, Inc.**, as Lessee, and **Manufacturers Financing Services**, as Lessor.

The above captioned Lease shall be amended and supplemented, effective **December 13, 2007** by the following:

### Original Equipment Description:

1      Mori Seiki Precision Horizontal Production Center, NH8000 DCG
       Equipped with Tool Breakage Detection System, AICC II Fast Data Server, 6 Pallet Carrier Pallet Pool,
       Coolant Gun at Setup Station, Cooljet 70/36DFV 1000 PSI High Pressure Coolant System and all standard
       and any additional parts, attachments and accessories.

### Revised Equipment Description:

1      Mori Seiki Precision Horizontal Production Center, NH8000 DCG
       Equipped with Tool Breakage Detection System, AICC II Fast Data Server, 6 Pallet Carrier Pallet Pool,
       Coolant Gun at Setup Station, Cooljet 70/36DFV 1000 PSI High Pressure Coolant System, Tooling and all
       standard and any additional parts, attachments and accessories.

### Original Payment Structure:

| | |
|---|---|
| Term: | 84 Months |
| Equipment Price: | $962,133.14 |
| Payments: #1 - #84 | $11,737.00 (Plus use tax) |
| Purchase Option: | FMV |

First payment due in advance.

### Revised Payment Structure:

| | |
|---|---|
| Term: | 84 Months |
| Equipment Price: | $992,133.14 |
| Payments: :#1 | $11,737.00 (Plus use tax) |
| Payments: #2 - #84 | $12,185.00 (Plus use tax) |
| Purchase Option: | FMV |

First payment due in advance.

All other terms and conditions of the Lease will remain in full force and effect.

**LESSOR:**
**MANUFACTURERS FINANCING SERVICES**

By:

Title: President

**LESSEE:**
**MASTER KRAFT MACHINING, INC.**

By:

Title: President

Exhibit C


**MANUFACTURERS FINANCING SERVICES**

## SCHEDULE

This Schedule is executed pursuant to that certain Master Sale and Assignment Agreement dated as of the _____ day of December, 2007 (the "Agreement"), by and between **Ellison Technologies, Inc.**, as Assignor, and **General Electric Capital Corporation**, as Assignee.

This Schedule is dated and effective as of ___12/28/07___ (the "Closing Date") and incorporates the terms and conditions of the Agreement, including the definitions of capitalized terms. This Schedule evidences the transfer, sale and conveyance from Assignor to Assignee of the Assigned Rights relating to the Contract and other related Assigned Rights (as described below) upon receipt by Assignor of the Purchase Price shown below:

1) Assignor Internal Contract Number: **#2801730**

2) Name of Customer:

3) Assigned Number of Rental Payments:

4) Rental Payment Amount:

5) Next Rental Due Date:

6) Customer Purchase Option:

7) Customer Implicit Rate:

8) Assignee Buy Rate:

Please see Lease and Transaction Coversheet attached hereto and made a part hereof

9) Purchase Price: **$ 993,851.15** to Assignor
**$N/A** to [specify any other entity receiving a portion of the Purchase Price, for example, the Equipment Supplier]

Assignor hereby verifies that the information shown in this Schedule is correct and complete as of the date shown below.

ASSIGNEE:

**GENERAL ELECTRIC CAPITAL CORPORATION**

By: _____
Name: _____
Title: _____
Date: _____

ASSIGNOR:

**ELLISON TECHNOLOGIES, INC.**

By: _____
Name: Darryl Schoen
Title: President
Date: 12/27/07

Exhibit D

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this 19th day of March, 2010, by and between General Electric Capital Corporation ("GE Capital"), a Delaware corporation, on one hand, and Master Kraft Machining Inc. ("Master Kraft"), a California corporation, and Kurt T. Matsuda ("Matsuda"), a citizen and resident of California, on the other hand.

## RECITALS

WHEREAS, on about January 25, 2006, U.S. Bancorp Equipment Finance, Inc. ("Bancorp"), as lessor, and Matsuda d/b/a Master Kraft, as lessee, entered into a Master Lease Agreement (the "Bancorp Lease") pursuant to which Bancorp leased to Matsuda one (1) Matsuura MAM 500 CNC Horizontal Machining Center with Yasnac 180, 8,000 RPM Spindle, 1 Degree Indexing, 60 Position ATC, Chip Conveyor, 11 Pallets with Change System and Work Station, Hi Pressure Thru Spindle Coolant, 800 PSI 320 Meters Memory, together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries (the "Bancorp Equipment");

WHEREAS, on about January 25, 2006, Matsuda executed a Guaranty (the "Bancorp Guaranty"), pursuant to which Matsuda guaranteed all of Master Kraft's obligations to Bancorp, including those arising under the Bancorp Lease;

WHEREAS, on about June 2, 2006, Bancorp assigned to GE Capital, for due consideration, the entirety of its interest in the Bancorp Lease and related agreements, including the Bancorp Guaranty;

WHEREAS, on about August 1, 2007, Manufactures Financing Services, a subdivision of Ellison Technologies, Inc. (collectively and separately, "MFS"), as lessor, and Master Kraft, as

lessee, entered into an Equipment Lease, No. 28101730 (the "MFS Lease") pursuant to which

MFS leased to Master Kraft one (1) Mori Seiki Precision Horizontal Production Center Equipped

with tool Breakage Detection System, AICC II Fast Data Server, 6 Pallet Carrier Pallet Pool,

Coolant Gun at Setup Station, Cooljet 70/36DVF 1000 PSI High Pressure Coolant System,

Tooling and all standard and any additional parts, attachments and accessories (the "MFS

Equipment");

    WHEREAS, on about August 1, 2007, Matsuda guaranteed all of Master Kraft's

obligations to MFS (the "MFS Guaranty"), including those arising under the MFS Lease;

    WHEREAS, on about December 28, 2007, MFS assigned to GE Capital, for due

consideration, the entirety of its interest in the MFS Lease and related agreements, including the

MFS Guaranty;

    WHEREAS, Master Kraft, as lessee, and Matsuda, as guarantor, defaulted on the

Bancorp Lease and MFS Lease (collectively, the "Leases") for failing to make the required

monthly payments under those leases;

    WHEREAS, upon Master Kraft's and Matsuda's defaults on the Leases, the full amounts

due under the Leases, including, but not limited to, all payment obligations, interest and other

expenses, fees and costs, were accelerated;

    WHEREAS, on June 25, 2009, GE Capital filed claims against Master Kraft and Matsuda

on the Leases and related guarantees in the matter known as *General Electric Capital*

*Corporation v. Master Kraft Machining, Inc. and Kurt T. Matsuda*, Case No C09-02854 SI (the

"Lawsuit"), in the District Court for the Northern District of California;

    WHEREAS, after the Lawsuit was filed, the Bancorp Equipment was sold for $70,000

(the "Bancorp Proceeds"), and the Bancorp Proceeds were sufficient to satisfy Master Kraft's

- 2 -

and Matsuda's payment obligations under the Bancorp Lease and Bancorp Guaranty, except for GE Capital's attorneys' fees and costs;

WHEREAS, the total amount, including attorneys' fees and costs, currently due and owing from Master Kraft and Matsuda to GE Capital under the Bancorp Lease and MFS Lease and related guarantees is $1,189,593.35 (the "Total Amount Due");

WHEREAS, to avoid the expenses and risks of continued litigation, GE Capital, Master Kraft and Matsuda have each independently determined to resolve between and among themselves all issues raised in or by or otherwise relating to the Leases and Lawsuit as provided in this Settlement Agreement.

## PROVISIONS

NOW, THEREFORE, in consideration of the foregoing Recitals, the covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, GE Capital, Master Kraft and Matsuda agree as follows:

1.      The above Recitals are incorporated by reference into this Settlement Agreement.

2.      The sum of $295,175.84 ("Total Settlement Amount") shall be paid by Master Kraft and/or Matsuda to GE Capital in installment payments identified in Paragraph 2(a), below (the "Installment Payments"). The Total Settlement Amount is comprised of $186,347.39 in past due payments, late charges and taxes due under the MFS Lease (the "Past Due Amount"); $53,492.16 in regular monthly payments due under the MFS Lease; and $55,336.29 in GE Capital's attorneys' fees and costs (the "Fees and Costs"). Each of the Installment Payments shall be wire transferred to GE Capital.

        (a)     Installment Payments

- 3 -

(i)    . $120,380.82 on or before April 15, 2010 (the "First Installment·

Payment"). The First Installment Payment consists of one half (1/2) of the Past Due Amount

($93,173.70), the regular April monthly payment under the MFS Lease ($13,373.04) and one.

quarter (1/4) of the Fees and Costs ($13,834.08).

(ii)    $120,380.80 on or before May 15, 2010 (the "Second Installment

Payment"). The Second Installment Payment consists of one half (1/2) of the Past Due Amount.

($93,173.69), the regular May monthly payment under the MFS Lease ($13,373.04) and one

quarter (1/4) of the Fees and Costs ($13,834.07).

(iii)    $27,207.11 on or before June 15, 2010 (the "Third Installment

. Payment"). The Third Installment Payment consists of the regular June monthly payment under

the MFS Lease ($13,373.04) and one quarter (1/4) of the Fees and Costs ($13,834.07).

(iv)    $27,207.11 on or before July 15, 2010 (the "Fourth Installment

Payment"). The Fourth Installment Payment consists of the regular July monthly payment under

the MFS Lease ($13,373.04) and one quarter (1/4) of the Fees and Costs ($13,834.07).

· 3.    Time is of the essence in the payment of the Total Settlement Amount and in the

payment of each of the Installment Payments.

4.    Contemporaneously with the execution and delivery of this Settlement

Agreement, Master Kraft and Matsuda shall execute and deliver to GE Capital a stipulated

· judgment in favor of GE Capital and against Master Kraft and Matsuda, jointly and severally, in

the Total Amount Due ($1,189,593.35), and for the surrender of the MFS Equipment by Master

Kraft and Matsuda to GE Capital ("Stipulated Judgment"). The Stipulated Judgment shall be in

the form attached hereto.

- 4 -

5.      GE Capital shall not file or execute on the Stipulated Judgment so long as Master
Kraft and Matsuda are in full and timely compliance with each and every term of this Settlement
Agreement. However, upon default under the terms of this Settlement Agreement, GE Capital
shall be free to file the Stipulated Judgment and proceed upon it in any manner authorized by law
and/or equity. In the event the Stipulated Judgment is entered in the Lawsuit, GE Capital shall
promptly file a partial satisfaction of judgment, crediting Master Kraft and Matsuda for the
amounts, if any, Master Kraft and Matsuda actually paid as Installment Payments as of the date
the Stipulated Judgment is entered.

6.      The Stipulated Judgment shall become final for all purposes upon entry thereof,
and GE Capital, Master Kraft and Matsuda waive any right to appeal or seek review of the
Stipulated Judgment by a higher court.

7.      Within three (3) court days of the execution of this Settlement Agreement, GE
Capital, Master Kraft and Matsuda shall jointly request that the Court retain jurisdiction to
enforce this Settlement Agreement.

8.      The MFS Lease, including its amendments and attachments, and related
agreements, including, but not limited to, the MFS Guaranty (collectively, the "MFS Agreement"),
are hereby modified by the terms of this Settlement Agreement. To the extent the terms of this
Settlement Agreement do not expressly modify the terms of the MFS Agreement, the terms of the
MFS Agreement shall remain in full force and effect. Nothing in this Settlement Agreement
relieves Master Kraft and Matsuda from continuing to be responsible, jointly and severally, for
making any and all payments required under the MFS Agreement after July 15, 2010.

9.      Within ten (10) days of its receipt of timely and full payment of all of the
Installment Payments set forth in Paragraph 2(a), above, GE Capital shall cause to be entered in

-5-

MASTER KRAFT MACHINING Fax:4085735551          Mar 24 2010 16:06     P.06

the Lawsuit an Order dismissing the Lawsuit without prejudice, with all parties to bear their own attorneys' fees and costs to the extent not included in the Total Settlement Amount.

10.    This Settlement Agreement may be executed in one or more counterpart copies, each of which when executed and delivered shall be an original, but all of which together shall constitute one and the same Settlement Agreement. This Settlement Agreement may be delivered by facsimile and/or electronic mail.

11.    GE Capital warrants and represents that it neither has made nor suffered to be made any assignment or transfer of any rights, claims, demands, or causes of action covered by this Settlement Agreement, and that it is the sole and absolute legal owner thereof.

12.    The MFS Agreement, as amended by this Settlement Agreement, constitutes the entire agreement of GE Capital, on one hand, and Master Kraft and Matsuda, on the other hand. No understandings, agreements, or representations, oral or otherwise, exist or have been made to any of the parties, or their respective shareholders, directors, officers, employees, attorneys, subsidiaries, affiliates, agents, and representatives, other than those contained herein and in the MFS Agreement.

13.    This Settlement Agreement may be modified only by a writing executed by GE Capital, Master Kraft and Matsuda.

14.    This Settlement Agreement shall be binding upon and inure to the benefit of GE Capital and Master Kraft and Matsuda, together with each of their respective heirs, legal representatives, successors, and assigns.

15.    This Settlement Agreement shall be governed in all respects by the laws which govern the MFS Agreement.

- 6 -

16. If, after the date of this Settlement Agreement, any provision of this Settlement Agreement is held to be illegal, invalid, or unenforceable under the present or future laws, such provision shall be fully severable and shall in no manner affect the validity of the remaining provisions of this Settlement Agreement.

17. GE Capital, Master Kraft and Matsuda hereby warrant and represent that they have read this Settlement Agreement, understand it, have consulted with their respective counsel regarding its legal effect, and have all necessary authority to execute and deliver this Settlement Agreement.

WITNESS the signatures of the parties hereto as of the date first written.

> General Electric Capital Corporation, a
> Delaware corporation
>
> By: _____
>
> Its: _____
>
> Master Kraft Machining Inc., a California
> corporation
>
> By: _____
>
> Its: _____
>
> _____
> Kurt T. Matsuda, an individual

US_ACTIVE-103297991.2

- 7 -

1  Evelien Verpeet (SBN 241520)
   Email: everpeet@reedsmith.com
2  Joonsik Maing (SBN 240927)
   Email: jmaing@reedsmith.com
3  REED SMITH LLP
   101 Second Street, Suite 1800
4  San Francisco, CA  94105
   Telephone:   +1 415 659 4812
5  Facsimile:    +1 415 391 8269

6  Attorneys for Plaintiff
   General Electric Capital Corporation, a
7  Delaware corporation

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11 GENERAL ELECTRIC CAPITAL              No.: C 09-02854 SI
   CORPORATION, a Delaware corporation,
12                                       STIPULATED JUDGMENT
            Plaintiff,
13                                       Honorable Susan Illston
        vs.
14
   MASTER KRAFT MACHINING INC., a
15 California corporation; and KURT T.
   MATSUDA, a citizen and resident of California,
16
            Defendants.
17

18

19    Pursuant to the stipulation of the parties, Plaintiff, General Electric Capital Corporation ("GE

20 Capital"), and Defendants, Master Kraft Machining, Inc. ("Master Kraft") and Kurt T. Matsuda

21 ("Matsuda"), and the terms of the Settlement Agreement between GE Capital, Master Kraft and

22 Matsuda;

23      IT IS HEREBY ORDERED:

24      THAT Judgment is hereby entered in favor of Plaintiff, GE Capital, and against Defendants,

25 Master Kraft and Matsuda, jointly and severally, in the amount of One Million One Hundred Eighty-

26 Nine Thousand Five Hundred Ninety-Three Dollars and Thirty-Five Cents ($1,189,593.35), with the

27 parties to bear their own costs to the extent not included in the Judgment;

28

   C09-02854 SI                        – 1 –
                          STIPULATED JUDGMENT

1    THAT Plaintiff, GE Capital, is entitled to possession of one (1) Mori Seiki Precision

2    Horizontal Production Center Equipped with tool Breakage Detection System, AICC II Fast Data

3    Server, 6 Pallet Carrier Pallet Pool, Coolant Gun at Setup Station, Cooljet 70/36DVF 1000 PSI High

4    Pressure Coolant System, Tooling and all standard and any additional parts, attachments and

5    accessories (the "MFS Equipment"), and Defendants, Master Kraft and Matsuda, shall immediately

6    surrender the MFS Equipment to GE Capital.

7    SO ORDERED.

8    DATED: _____, 2010.

9

10                                    Honorable Susan Illston
                                      United States District Court Judge
11

12   Agreed and Stipulated to:

13   DATED: March 19, 2010.

14                                    General Electric Capital Corporation, a Delaware
                                      corporation
15

16   By: _____

17   Its: _____

18

19   DATED: March 19, 2010.

20                                    Master Kraft Machining, Inc., a California corporation

21

22   By: _____

23   Its: _____

24
     DATED: March 19, 2010.
25

26                                    _____
                                      Kurt T. Matsuda, an individual.
27

28
     US_ACTIVE:\05909467.1

     C09-02854 SI                           – 2 –
                                    STIPULATED JUDGMENT

Exhibit E



GE Capital

May 27, 2011

Kurt T Matsuda
11081 Chula Vista Ave.
San Jose, CA 95127

**ATTENTION: Kurt Matsuda**

Re: Master Kraft Machining Inc.'s Lease Agreement 4495864003 with GE CAPITAL
(collectively, the "Lease")

Dear Mr. Matsuda:

You are hereby notified that Master Kraft Machining Inc. is in default under the
Lease for failing to make the scheduled rent payments as and when due under the
Lease. To date, Master Kraft Machining Inc. is past due in its payments to GE
CAPITAL in the aggregate amount of $57,147.63 (representing past due Rent
payments, taxes due and late fees), plus continually accruing fees, costs and
expenses, including without limitation, attorney's fees. We hereby demand that
payment of such amount be paid to GE CAPITAL within 10 days of May 27, 2011.
Your failure to make such payment to us by such date shall result in (i) termination
of your right to the continued use and possession of the Equipment and (ii) the
automatic acceleration of your payment obligations under the Lease without any
further action being necessary on our part.

Upon acceleration, $861,598.10 shall be immediately due and payable by you to us
plus any applicable fees, costs and expenses owed or owing by you under the terms
of the Lease. GE CAPITAL shall also pursue all rights and remedies available to it
under the Lease at law or equity, including without limitation, the repossession of the
Equipment.

If you have any questions, please do not hesitate to call.

Sincerely,

Rhonda Estling
Litigation Specialist
PH: 319-841-7175

CC: LITIGATION FILE

Remit to:
GE CAPITAL
PO Box 31001-0275
Pasadena, CA 91110-0275

Exhibit F

## THIRD PARTY AUTHORIZATION FOR PAYOFF AND RELEASE OF COLLATERAL

May 26, 2011

To:     GE Capital
        Attn: Rhonda Estling
        1010 Thomas Edison Blvd
        Cedar Rapids, IA 52404

| Customer Name: | MASTER KRAFT MACHINING, INC | Attention: KURT MATSUDA |
|---|---|---|
| Phone Number: | 510-661-9900 | Fax number: |
| For the following contract(s): | 4495864-003 | |

Authorizes GE Capital to :

| 1. Quote Payoff To: | Company Name: | KNT, INC |
|---|---|---|
| | Attention: | KEITH NGO |
| | Street Address: | 4220 BUSINESS CENTER DR |
| | City, State, Zip: | FREMONT, CA 94538 |
| | Phone:   510-651-7163 | Fax 510-979-1136 |
| 2. Accept Payoff Funds from: | Company Name: | SAME |
| | Attention: | |
| | Street Address: | |
| | City, State, Zip: | |
| | Phone: | Fax |
| 3. Release Title or UCC to: | Company Name: | SAME |
| | Attention: | |
| | Street Address: | |
| | City, State, Zip: | |
| | Phone: | Fax |

| Authorized by: | | |
|---|---|---|
| Company Name: | MKM, INC & Kurt Matsuda Individual | By: |
| Phone Number: | 408-966-9518 | Fax Number: |

GE Capital should release all right, title and interest, which it has or may have in the equipment,
which is the subject of the above contract(s). Siemens Financial Services should release after 5 business days
if funds are sent via wire or cashier's check, and after 10 business days if funds are sent via personal
or business check