United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>MASTER KRAFT MACHINING INC. ET AL,<br><br>    Defendant.<br>_____/ | No. C -11-03238 CW (EDL)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

On June 30, 2011, Plaintiff General Electric Capital Corporation filed this action against Defendants Master Kraft Machining, Inc. and Kurt T. Matsuda alleging claims for breach of contract arising from an equipment lease. After entry of default against Defendants on August 9, 2011, Plaintiff filed this motion for entry of default judgment on September 1, 2011. On September 2, 2011, Plaintiff's motion was referred to this Court for a report and recommendation pursuant to Northern District of California Civil Local Rule 72-1. The motion came on for hearing on October 11, 2011. Attorney Joonsik Maing appeared for Plaintiff. Defendants did not file an opposition to Plaintiff's Motion, and did not appear at the hearing. For the reasons stated below, the Court recommends granting Plaintiff's Motion in the amount of $347,690.22.

**Background**

Plaintiff is in the business of leasing manufacturing equipment. Compl. ¶ 1. Defendant Master Kraft Machining is in the business of manufacturing and assembling machines and parts for various industries, including the medical and aerospace industries. Compl. ¶ 2. Defendant Kurt T.

Matsuda is the president of or affiliated with Master Kraft. Compl. ¶ 3.

On August 1, 2007, Manufacturers Financing Services, a subdivision of Ellison Technologies, Inc. (collectively "MFS"), as lessor, and Master Kraft, as lessee, entered into an Equipment Lease ("MFS Lease"). Compl. ¶ 7, Ex. A; Milburn Decl. ¶ 5. Pursuant to the MFS Lease, MFS leased equipment to Master Kraft, namely one Mori Seiki Precision Horizontal Production Center Equipped with Tool Breakage Detection System, AICC II Fast Data Server, 6 Pallet Carrier Pallet Pool, Coolant Gun at Setup Station, Cooljet 70/36DVF 1000 PSI High Pressure Coolant System, Tooling, and all standard and any additional parts, attachments and accessories. Compl. ¶ 8; Milburn Decl. ¶ 6. Also pursuant to the Lease, Matsuda personally guaranteed all of Master Kraft's obligations to MFS, including those obligations under the MFS Lease and any obligations arising after the execution date of the MFS Lease ("MFS Guaranty"). Compl. ¶ 9, Ex. A at ¶ 14; Milburn Decl. ¶ 7. At about the same time that the MFS Lease was executed, MFS and Master Kraft executed an Addendum to the Lease pursuant to which MFS granted Master Kraft the option to either extend the MFS Lease or purchase the MFS Equipment upon expiation of the MFS Lease. Compl. ¶ 10; Milburn Decl. ¶ 8. On December 28, 2007, MFS assigned the entirety of its interest in the MFS Lease to Plaintiff. Compl. ¶ 11, Ex. C; Milburn Decl. ¶ 9.

In March 2009, Master Kraft, as lessee, and Matsuda, as guarantor, defaulted under the MFS Lease for failing to make monthly rent payments as required under the Lease. Compl. ¶ 12; Milburn Decl. ¶ 10. On June 25, 2009, Plaintiff sued Master Kraft and Matsuda to collect all amounts due and owing under the MFS Lease and the Guaranty. Compl. ¶ 13; <u>General Electric Capital Corporation v. Master Kraft Machining, Inc.</u>, C-09-2854 SI; Milburn Decl. ¶ 11. On March 19, 2010, Plaintiff, Master Kraft and Matsuda entered into a settlement agreement resolving the 2009 lawsuit. Compl. ¶ 14, Ex. D; Milburn Decl. ¶ 12. The settlement agreement expressly provided that Master Kraft and Matsuda were not relieved from continuing to be responsible for making all payments under the MFS Lease after July 15, 2010. Compl. ¶ 14, Ex. D at ¶ 8; Milburn Decl. ¶ 13. Master Kraft and Matsuda made all payments required under the settlement agreement. Compl. ¶ 15.

As of January 2011, however, Master Kraft and Matsuda ceased making payments as

required under the MFS Lease. Compl. ¶ 19. On May 27, 2011, Plaintiff delivered to Master Kraft and Matsuda a formal notice of default notifying them that they were in default under the MFS Lease for failure to remit past due payments that totaled $57,147.63 at that time. Compl. ¶ 17, Ex. E; Milburn Decl. ¶ 15. Master Kraft and Matsuda failed to cure the default within ten days as required by the notice of default. Compl. ¶ 18; Milburn Decl. ¶ 16. Pursuant to the terms of the MFS Lease, the full amount due under the MFS Lease was accelerated and was then due and owing from Master Kraft and Matsuda, including payment obligations, interest, attorneys' fees, expenses and all other related costs and amounts due under the Lease. Compl. ¶ 18; Milburn Decl. ¶ 23. The full amount due and owing when the complaint was filed was in excess of $344,000. Compl. ¶ 24. Plaintiff at all times performed any and all conditions and obligations required of it under the Lease. Compl. ¶ 20; Milburn Decl. ¶ 18.

Under the MFS Lease, in the event of default, Plaintiff, at its discretion, could sell, re-lease or dispose of the MFS Equipment. Compl. ¶ 21; Milburn Decl. ¶ 19. On June 1, 2011, Plaintiff exercised its rights under the MFS Lease and sold the equipment in place to a third party, KNT Manufacturing, for $575,000. Compl. ¶¶ 21-22; Milburn Decl. ¶ 20. After deducting the costs related to the sale of the MFS Equipment, the net proceeds from the sale were $517,500. Compl. ¶ 22; Milburn Decl. ¶ 21. Master Kraft and Matsuda authorized the sale of the MFS Equipment. Compl. ¶ 21; Ex. F.

**Discussion**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a defendant against whom a default has been entered, assuming that defendant is not an infant, is not incompetent or in military service. Defendants here are not unrepresented minors, incompetent or in military service. See Declaration of Joonsik Maing at ¶ 15.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)). In exercising its discretion to grant default judgment, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the

sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the complaint are taken as true, except for those relating to damages. See Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987). Here, the Eitel factors weigh in favor of default judgment. Most importantly, the substantive claims in the complaint appear to have merit and the complaint is sufficient to state those claims.

Plaintiff has stated claims for breach of contract. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). As described above, Plaintiff alleges that it entered into the Lease Agreement with Defendants, that Plaintiff performed under the contract, and that Defendants breached the Lease Agreement by failing to make payments under the Lease. Plaintiffs have stated the amount of damages in the full amount owing under the Lease Agreement.

The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiff would be prejudiced because it would likely be without a remedy. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Second, although the sum of money at stake here is large, it is no more than can be reasonably ascertained. Plaintiff seeks the total amount due and owing under the MFS Lease less the amount recovered from the sale proceeds. See Compl. ¶ 24. Third, because Defendants did not file an answer to the complaint, there is little to suggest that there is a possibility of a dispute concerning material facts. Nor is there any showing that Defendants' default was due to excusable neglect. This is not the first time that Defendants have defaulted on the MFS Lease. The prior lawsuit involving Defendants' default resulted in a settlement agreement requiring Defendants to make timely installment payments and thereafter to continue to make payments under the lease.

4

1 Although Defendants fulfilled their payment obligations under the settlement agreement, they again
2 defaulted on their obligations under the same lease. Finally, while there is a policy favoring
3 decisions on the merits, default is appropriate where the defendants have refused to participate. See
4 Croswaithe v. Galvin Construction Management, 2007 U.S. Dist. LEXIS 73757, *9 (N.D. Cal. Sept.
5 25, 2007). Accordingly, the Court recommends that the motion for default judgment be granted.

**Damages**

Plaintiff has the burden of proving its damages through testimony or written affidavit. To prove Plaintiff's damages, Plaintiff submitted the declarations of Joonsik Maing, Plaintiff's counsel, and Jon Milburn, a Litigation Specialist employed by Plaintiff.

### Compensatory damages

Plaintiff seeks $344,707.39 in compensatory damages, representing the total amount due and owing under the MFS Lease, consisting of total past due payments, tax, late charges, legal expenses, remaining payments and residual. See, e.g., Compl. ¶ 24; Milburn Decl. ¶¶ 23-27. Because Plaintiff has stated a breach of contract claim, the Court recommends an award of $344,707.39 in compensatory damages.

### Attorneys' fees

Under the MFS Lease and Guaranty, Defendants are obligated to pay the legal expenses, including attorneys' fees and costs, incurred by Plaintiff in the enforcement of its rights under those agreements. Compl. ¶ 23; Ex. A. Plaintiff seeks $1,850.00 in fees incurred in prosecuting this action through default. Maing Decl. ¶¶ 9-10. The attorneys in this matter billed at an hourly rate of $250.00, and the hours spent on this case reflect a discount of at least 15% from Plaintiff's counsel's customary rates. Maing Decl. ¶ 12; Ex. D, E. The Court finds that the hourly rates and number of hours are reasonable.

### Costs

Plaintiff seeks costs in the amount of $1,132.83. Maing Decl. ¶ 10; Ex. E. This amount includes costs for courier services, photocopying, and postage. See Maing Decl. Ex. E. The Court finds that the costs are reasonable.

**Conclusion**

5

The Court recommends granting Plaintiffs' motion for default judgment in the amount of $344,707.39 in compensatory damages, $1,850.00 in attorneys' fees and $1,132.83 in costs, for a total of $347,690.22.

Any party may serve and file specific written objections to this recommendation within ten (10) business days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3 .  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: October 12, 2011

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge